IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 18-cr-30019 |
| | ) |
| JIMOTHY KIRKHAM, | ) |
| | ) |
| Defendant. | ) |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court are Defendant Jimothy Kirkham's pro se Motion for Compassionate Release (d/e 41) and Amended Motion for Compassionate Release (d/e 43), requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, Defendant's motions are DENIED.

## I. BACKGROUND

On August 3, 2018, Defendant pled guilty to one count of possession with intent to distribute mixtures or substances containing a detectable amount of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. §

924(c)(1)(A)(i).  See Minute Entry, Aug. 3, 2018.  On December 10, 2018, the undersigned district judge sentenced Defendant to a total of sixty-four months' imprisonment, consisting of four months' imprisonment on the controlled substance offense and sixty months imprisonment on the firearm offense, to be served consecutively to each other.  Judgment 2, d/e 33.  A three-year term of supervised release was also imposed on each count to be served concurrently with each other.  Id. at 3.

Defendant is currently serving his sentence at USP Leavenworth in Leavenworth, Kansas, and his projected release date is October 25, 2022.  See Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last accessed January 14, 2021).

On December 22, 2020, Defendant filed a pro se Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) With Supporting Memorandum, d/e 41, seeking a sentence reduction based on his health issues and the COVID-19 pandemic.  According to Defendant's pro se motion, on May 31, 2020, Defendant sent an email to the warden of his facility to determine if Defendant would be eligible for early release to home confinement under the Coronavirus Aid, Relief, and Economic Security (CARES) Act.  Pro

Se Mot. Compassionate Release 4; Ex. A. Defendant further states that he was informed by Bureau of Prisons (BOP) staff that "during the pandemic, resort to written forms . . . no longer is feasible" and that Defendant "should file a Motion in Court if [Defendant] wishes to pursue compassionate release." Id. at 4.

On December 30, 2020, following the appointment of the Federal Public Defender's Office to represent Defendant, an amended Motion for Compassionate Release, d/e 43, was filed. Defendant's amended motion argues first that Defendant's request for release to home confinement under the CARES Act satisfies the exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A). Am. Mot. Compassionate Release 10. In the alternative, Defendant argues in the amended motion that the Court may excuse the exhaustion requirement "because the Bureau of Prisons 'is shown to be biased or has otherwise predetermined the issue before it.'" Id. (quoting McCarthy v. Madigan, 503 U.S. 140, 147 (1992)).

On January 4, 2021, the Government filed a Response Opposing Defendant's Motion for Compassionate Release. d/e 48. The Government argues that Defendant has failed to fulfill § 3582(c)(1)(A)'s exhaustion requirement and that this requirement

is a mandatory claim-processing rule that cannot be waived by the Court.  Resp. 4-5.

If released from custody, Defendant proposes to live with his mother and her husband in Springfield, Illinois.  On January 3, 2021, the U.S. Probation Office filed a Memorandum (d/e 46) concluding that Defendant's proposed release plan is suitable.  Mem. 2.

## II. ANALYSIS

As a general matter, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed.  See 18 U.S.C. § 3582(c).  However, several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met.  See 18 U.S.C. § 3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory language at 18 U.S.C. § 3582(c)(1)(A).  See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194.  Prior to the First Step Act, the Court could grant a defendant compassionate release only if the Director of the BOP filed a motion seeking that relief.  With the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now

allows an inmate to file with the Court a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for BOP to file a motion or waiting 30 days from when the inmate's request was received by the BOP, whichever is earlier.  The statute now provides as follows:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Initially, Defendant argues that his request for release to home confinement under the CARES Act satisfies the exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A).  Am. Mot. Compassionate Release 10.  In the alternative, Defendant argues that the Court

may excuse the exhaustion requirement because BOP staff refused to provide Defendant with the proper form to request compassionate release and "because the Bureau of Prisons 'is shown to be biased or has otherwise predetermined the issue before it.'" Id. (quoting McCarthy, 503 U.S. at 147).

The Government has timely objected to Defendant's compassionate release request on the grounds that Defendant has failed to exhaust his administrative remedies. See Resp. 4-5. The Government argues that Defendant's request to the warden of USP Leavenworth that the warden consider Defendant's eligibility for early release to home confinement under the CARES Act does not satisfy the compassionate release statute's exhaustion requirement. Id. Thus, before the Court can consider the extraordinary and compelling reasons for release advanced by Defendant, or the application of the 18 U.S.C. § 3553(a) factors, the Court must decide the threshold issue of whether Defendant has satisfied the statutory exhaustion requirement. Cf. United States v. Gunn, No. 20-1959, 2020 WL 6813995, at *1 (7th Cir. Nov. 20, 2020) (classifying exhaustion requirement as "affirmative defense" rather than jurisdictional requirement).

The requirement to exhaust administrative remedies before seeking relief from the courts serves to protect administrative agency authority and promote efficiency. See Woodford v. Ngo, 548 U.S. 81, 89 (2006). "And since agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise." McKart v. United States, 395 U.S. 185, 194 (1969). One purpose of the exhaustion requirement is to ensure that the Bureau of Prisons has an opportunity to "articulate [its] decision and rationale" vis-à-vis a particular request for compassionate release, thus giving the district court the benefit of BOP's input. Gunn, 020 WL 6813995, at *2. The Seventh Circuit has made it clear that district courts are "expect[ed] . . . to give [BOP]'s analysis substantial weight." Id.

**A. Defendant's Request to BOP for Consideration of Early Release to Home Confinement Under the CARES Act Does Not Satisfy the Exhaustion Requirement in 18 U.S.C. § 3582(c)(1)(A).**

Defendant's request that the warden of his facility consider Defendant's eligibility for early release to home confinement does not satisfy the exhaustion requirement in the compassionate release statute because the nature of the relief requested is

fundamentally different, as are the criteria applied to evaluate each request. In this case, BOP has not yet had a chance to "articulate [its] decision and rationale" concerning a request for compassionate release. See Gunn, 2020 WL 6813995, at *2.

The CARES Act expands the powers of the Attorney General and the Director of the Bureau of Prisons—not the courts—to expand placement in home confinement. See Pub. L. No. 116-136, 134 Stat. 516 (CARES Act § 12003(b)(2)). A release to home confinement under the CARES Act only changes the location where a defendant serves a term of imprisonment from a BOP facility to the defendant's residence. A defendant released to home confinement in this manner continues to serve a custodial sentence and continues to remain in the custody of BOP. The Bureau of Prisons alone has the statutory authority to designate a defendant's place of imprisonment, including placement in home confinement. See 18 U.S.C. §§ 3621(b), 3624(c)(2). Compassionate release on the other hand allows a court to "reduce the term of imprisonment" to time served, resulting in the release of a defendant from BOP custody. See 18 U.S.C. § 3582(c)(1)(A).

Here, Defendant sent an email to the warden of his facility requesting that the warden determine if Defendant was "eligible for Early Home Confinement under the CARES act section 12003(b)(2)." See Pro Se Mot. Compassionate Release, Ex. A.  The email only requested that the warden consider Defendant's eligibility for early release to home confinement; the email did not set forth any reasons in support of the request.  See id.  According to Defendant, the warden never responded to the email.  Am. Mot. Compassionate Release 7.

A request for early release to home confinement under the CARES Act is guided by two memoranda issued by then Attorney General William Barr on March 26, 2020, and April 3, 2020.  See Am. Mot. Compassionate Release 4.  In the March 26, 2020, memorandum, the Attorney General directed BOP to "consider the totality of circumstances for each individual inmate, the statutory requirements for home confinement" and a "non-exhaustive list of discretionary factors" when evaluating a request for early release to home confinement.  See Barr Memo, "Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic," Mar. 26, 2020, available at

https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf.  Among the discretionary factors to be considered are the age and vulnerability of an inmate to COVID-19, the security level of the facility currently housing the inmate, the inmate's conduct while in custody, the inmate's PATTERN score, the suitability of the inmate's release plan, the inmate's crime of conviction, and an assessment of the danger posed to the community by the inmate. Id.

When evaluating a request for compassionate release, a court must consider whether "extraordinary and compelling reasons warrant . . . a reduction" in a term of imprisonment and whether such a reduction is "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A). Even if extraordinary and compelling circumstances warranting a reduction in a defendant's sentence exist, a court must then "consider[ ] the factors set forth in section 3553(a) to the extent that they are applicable" in order to determine if a sentence reduction is appropriate under the particular circumstances of the case.  18 U.S.C. § 3852(c)(1)(A).

This Court has recently held that a defendant has exhausted when a compassionate release motion merely updates the 'extraordinary and compelling reasons' advanced in an initial administrative request for compassionate release to reflect the danger posed by the COVID-19 pandemic. See United States v. McIntosh, No. 05-CR-30096, 2020 WL 7312176, at *4 (C.D. Ill. Dec. 11, 2020), opinion vacated on other grounds on reconsideration, United States v. McIntosh, No. 05-CR-30096, 2021 WL 51428 (C.D. Ill. Jan. 6, 2021). In that situation, the request made to BOP for compassionate release (not a request for early release to home confinement) is the same request made to the Court, and the reasons for the request are substantially similar, as are the relief requested and the factors to be considered.

In this case, however, both the statutory requirements to be considered in evaluating a request for either early release to home confinement under the CARES Act or compassionate release under 18 U.S.C. § 3582(c)(1)(A) are different, as is the nature of the relief requested. When a defendant makes only a request for home confinement before filing a motion for compassionate release with the Court, BOP has not even had an opportunity to first consider a

request for compassionate release, much less articulate its decision and rationale for denying such a request.  And where (as here) Defendant's request for early release to home confinement does not set forth a basis for that request, but merely requests a determination as to eligibility, the Court cannot say that the reasons for the request are the same either.  For these reasons, the Court finds that Defendant has not exhausted his administrative remedies by first submitting the request to BOP in order to allow BOP the initial opportunity to exercise its discretion or apply its expertise in considering the request.

**B.  BOP Has Not Been Shown to be Biased or to Have Otherwise Predetermined Defendant's Request for Compassionate Release.**

In the alternative, Defendant argues that the Court may excuse the exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A) because BOP staff refused to provide Defendant with the proper form to request compassionate release and "because the Bureau of Prisons 'is shown to be biased or has otherwise predetermined the issue before it.'" Am. Mot. Compassionate Release 10. (quoting McCarthy, 503 U.S. at 147).  For much the same reasons discussed

in the preceding section, the Court finds that excusing the exhaustion requirement is not appropriate in this particular case.

In support of his alternative argument, Defendant argues the application of the factors that BOP must consider when evaluating a request for early release to home confinement and states that Defendant would not qualify for early release to home confinement under the current guidelines promulgated by the former Attorney General due to Defendant's firearm conviction under 18 U.S.C. § 924(c).  See Am. Mot. Compassionate Release 10.  While this line of argument may be germane to whether BOP has predetermined Defendant's request for early release to home confinement under the CARES Act, it does not show that BOP has predetermined a decision on compassionate release given the differing factors to be considered for each request and the absence of a basis for the request for early home confinement in the record as discussed previously.  While the alleged failure by BOP staff to provide the form required to request compassionate release is concerning, the Court cannot say on the record before it that BOP is biased or has predetermined a request by Defendant for compassionate release that he has not yet made to BOP.

### III. CONCLUSION

Because Defendant has not exhausted his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A), Defendant Jimothy Kirkham's Amended Motion for Compassionate Release (d/e 43) and Defendant's pro se Motion for Compassionate Release (d/e 41) are DENIED.

ENTER: January 22, 2021

/s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE